**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARTHA B. RANSOM,** | ) |
| **7504 Milway Drive** | ) |
| **Alexandria, VA 22306,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **No.** |
| **v.** | ) |
| | ) |
| **MICHAEL JOHANNS,** | ) |
| **Secretary of Agriculture** | ) |
| **U.S. Department of Agriculture** | ) |
| **14th & Independence Avenue, S.W.,** | ) |
| **Washington, D.C. 20250,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Preliminary Statement**

1.) This is an action by plaintiff, Martha B. Ransom, who was formerly employed by the U.S. Department of Agriculture ("the agency" or "Agriculture") in its Agricultural Marketing Service ("AMS"). The case seeks redress for Agriculture's discriminatory failure to upgrade Ms. Ransom's position and promote Ms. Ransom to Grade GS-15 on account of her sex (female) and her disability (depression), and the agency's retaliatory, involuntary reassignment of Ms. Ransom to a nonsupervisory position. It arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§701 et seq.

2.)  Ms. Ransom formerly served as Chief of the Research and Promotion Branch, Fruit and Vegetable Programs, of the agency's Agricultural Marketing Service ("AMS") as a Grade 14.

3.)  Defendant initiated the process of studying Ms. Ransom's position for a possible upgrade to GS-15 and Ms. Ransom herself for promotion to Grade 15 in an on-going, uninterrupted desk audit process which began in September of 2000.

4.)  Despite the fact that Ms. Ransom and her position were properly graded at GS-15, Agriculture concluded the process of actively considering to upgrade Ms. Ransom's position and to promote Ms. Ransom to GS-15 with a decision not to do so, one decision which it reached on or about July 18, 2002, and a personnel action which became effective no earlier than February 23, 2003.

5.)  In refusing to upgrade Ms. Ransom's position to GS-15 and promote her to that Grade level, Agriculture discriminated against Ms. Ransom and treated her disparately from similarly situated male Branch Chiefs and nondisabled Branch Chiefs.

6.)  Ms. Ransom timely and promptly initiated and pursued the administrative EEO complaints process beginning on August 14, 2002.

7.)  In response, effective February 23, 2003, Agriculture retaliated against Ms. Ransom by reassigning her involuntarily to a nonsupervisory position.[1]

8.)  To remedy defendant's unlawful conduct, plaintiff seeks a.) a declaration that defendant unlawfully discriminated and retaliated against her by failing to upgrade her position and promote plaintiff to GS-15 and by reassigning her involuntarily to a nonsupervisory position; b.) an order promoting plaintiff to GS-15 and awarding her backpay and benefits retroactively including, but not limited to, retroactive recalculation of her annuity; c.) compensatory damages; and d.) an award of attorneys' fees and costs.

## Parties, Jurisdiction, And Venue

9.)  Plaintiff Martha B. Ransom was employed by the U.S. Department of Agriculture in its Agricultural Marketing Service until her retirement effective August 1, 2003.  Ms. Ransom is a woman who suffers depression periodically and resides at the address recited in the caption of this Complaint.

10.) Defendant Michael Johanns is the Secretary of Agriculture and as such is the official who heads the U.S. Department of Agriculture, of which the Agricultural Marketing Service is a subordinate component, and the federal agency which formerly employed plaintiff and engaged in the acts of

---

[1]  The personnel action denying upgrading Ms. Ransom's position to GS-15 and promoting Ms. Ransom to that Grade would not become effective before she was reassigned involuntarily.

discrimination and retaliation that are the subjects of this suit. Defendant is sued in his official capacity only.

11.) Jurisdiction of this Court is based upon 28 U.S.C. §1332, 29 U.S.C. §794a(a)(1), and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(c)). Venue lies in this judicial district pursuant to 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because defendant's acts of discrimination and retaliation occurred in this judicial district, where plaintiff was and would have been employed.

## Statement Of The Case

12.) Plaintiff Martha B. Ransom was employed by the U.S. Department of Agriculture ("Agriculture") in Washington, D.C., beginning in August of 1970 and continuing until her retirement, effective August 1, 2003.

13.) In September of 1991, defendant appointed Ms. Ransom to the position of Chief of the Research and Promotion Branch, Fruit and Vegetable Programs, in the Agricultural Marketing Service ("AMS"). The position was a supervisory one and graded at the GS-14 level.

14.) Ms. Ransom's duties and responsibilities as Branch Chief included being responsible for the administration and development of fruit and vegetable research and promotion programs under the jurisdiction of AMS; for establishing and heading the administration of seven new national AMS programs for fruits, vegetable, and specialty crops; for conducting rulemaking

relating to these programs; and for serving as an expert witness in litigation against Agriculture and AMS.

15.) Ms. Ransom is a woman and suffers from depression, an impairment which substantially limits, or was regarded by her former employer as substantially limiting, one or more of her major life activities; and is a qualified individual with a disability because, with or without reasonable accommodation, she was able to perform the essential functions of the positions she encumbered with the Department of Agriculture.

16.) At all times relevant, Agriculture employed several processes for considering whether to upgrade permanent positions and incumbent General Schedule employees like Ms. Ransom for promotion on account of accretion of higher graded duties. Among these processes were desk audits, which entailed studying the grade level to assign the incumbent employee's position; whether to upgrade that position; and, if so, whether to advertise that position for competition or promote the incumbent employee in place.

17.) The desk audit process contained multiple steps, and began with a request by Agriculture management for the servicing personnel function to study a position and management's preparation of a proposed new position description. A staff personnelist then reviewed the proposed position description; interviewed both the employee and management; studied the duties performed in practice; and assigned a recommended job series, title, and grade.

18.) Although the staff personnelist's function was completed by preparing a position evaluation statement which recommended a grade level for the position being audited and, if appropriate, a grade level for the incumbent employee, Agriculture's desk audit process only concluded with action on the part of management.

19.) The outcome of a desk audit did not become effective at any time before Agriculture management certified a final position description as accurately reflecting an employee's actual duties; made a final decision whether to advertise a position for competition, promote an incumbent employee in place, or leave an incumbent employee's grade unaffected; and notified an employee of its final decision.

20.) In a case where a desk audit resulted in a position being evaluated at a new and higher grade, Agriculture management could only conclude the process and make it effective by taking one of the following two actions:  by upgrading a position and either advertising it at the new grade level or promoting the incumbent employee; or by removing grade controlling duties and revising an employee's position description.

21.) In all cases, the desk audit process was not finalized and Agriculture's decision not effective until official notification was provided to the employee whose position was being audited.

22.) Agriculture commenced considering Ms. Ransom's position for an upgrade and Ms. Ransom for promotion to the GS-15

grade level in an on-going, uninterrupted desk audit process beginning in September of 2000. At the request of AMS management, a staff personnel specialist reviewed Ms. Ransom's proposed position description and interviewed Agriculture management as part of her overall task of evaluating a recommended grade for Ms. Ransom's position and for Ms. Ransom.

23.) On or about October 2, 2000, the staff personnel specialist responsible for auditing Ms. Ransom's position produced a Position Evaluation Statement which recommended that Ms. Ransom's proposed new position description and position be graded at GS-15.

24.) Ms. Ransom repeatedly requested a copy of the staff personnelist's Position Evaluation Statement, requests which Agriculture uniformly denied on the ground that Ms. Ransom's desk audit was not complete and did not honor until after Ms. Ransom applied for retirement.

25.) In accordance with the agency's personnel practice and policies, senior AMS officials did not consider the staff personnel specialist's Position Evaluation Statement as a final classification study, but only a step in the desk audit process. Accordingly, after receiving the staff personnelist's Position Evaluation Statement, the agency did not certify a final position description for Ms. Ransom or notify Ms. Ransom of a final decision. Neither did the agency make a final decision whether to upgrade Ms. Ransom's position and, if so, whether to promote her to GS-15 or advertise it for competition.

26.) Between November of 2000 and April of 2001, senior AMS officials conferred among themselves and with representatives of the agency's servicing personnel office and decided not to make a final decision and take final, effective personnel action about whether to upgrade Ms. Ransom's position and, if so, either to advertise the position for competition or to promote Ms. Ransom to GS-15, until AMS' servicing personnel office studied the matter further, as part of a larger classification review of the grade levels of other positions in AMS.

27.) Unknown to Ms. Ransom, on or about April 2, 2001, AMS' servicing personnel office had recommended to senior officials of AMS that Ms. Ransom's proposed new position description and position should be graded GS-15.

28.) At least once a month beginning no later than April of 2001, Ms. Ransom asked her first and second line supervisors about the status of the desk audit of her position, its possible upgrade to GS-15, and her possible promotion to Grade 15.

29.) Uniformly, Ms. Ransom's supervisors responded that a decision about her promotion to GS-15 was not final and could not be made without the completion of further review by AMS' servicing personnel office, which Ms. Ransom's supervisors uniformly advised her was still on-going.

30.) Beginning in the early part of July of 2002, Ms. Ransom was absent from work on approved medical leave due to a recurrence of her depression.

31.) Upon her return on July 23, 2002, Ms. Ransom's immediate supervisor notified her that the agency's servicing personnel office had completed its review of her position in her absence and concluded that it was properly graded at GS-14 and that the agency would be taking no action to promote her to Grade 15.

32.) Defendant's action of not upgrading Ms. Ransom's position and promoting Ms. Ransom to GS-15 was discriminatory on the basis of her sex (female) and her disability (depression).

33.) Promptly upon learning of defendant's decision not to upgrade her position or promote her to GS-15, on August 14, 2002, Ms. Ransom initiated the administrative EEO complaints process.

34.) In retaliation for Ms. Ransom's initiation and pursuit of an administrative EEO complaint, effective February 18, 2003, senior AMS management reassigned Ms. Ransom involuntarily from her supervisory position as Chief of the Research and Promotion Branch, Fruit and Vegetable Programs, to a position in defendant's Office of Identity Preservation and Biotech Verification, a position not classified as supervisory and not performing any supervisory duties.

35.) During July of 2003, Ms. Ransom applied for retirement from federal service.

36.) After applying for retirement, Ms. Ransom again asked Agriculture for copies of all documents relating to the desk audit of her position.

37.) For the first time, in the last week of July of 2003, the agency released a copy of the staff personnelist's Position Evaluation Statement of October 2, 2000, and the servicing personnel office's Memorandum of April 2, 2001, which transmitted the foregoing Position Evaluation Statement to senior AMS management and recommended upgrading Ms. Ransom and her position to GS-15.

38.) The agency's release of the staff personnelist's Position Evaluation Statement and servicing personnel office's Memorandum in the last week of July of 2003 provided Ms. Ransom with her first knowledge of the AMS' servicing personnel office's recommendation to senior AMS management.

39.) Ms. Ransom retired from Agriculture effective August 1, 2003.

## Exhaustion Of Administrative Remedies

### A.    Ms. Ransom's First Use Of The Administrative Process

40.) On August 14, 2002, Ms. Ransom initiated the informal EEO process for the first time and requested counseling on a number of matters including, but not limited to, defendant's discriminatory failure to upgrade her position and promote her to GS Grade 15 on account of her sex and her disability (depression), in fewer than 45 days of first being notified that defendant would not do so and before defendant made the effective date of the foregoing personnel action.

41.) On September 27, 2002, the informal EEO process was closed out due to the EEO counselor's inability to conciliate a satisfactory resolution of Ms. Ransom's informal complaint.

42.) On October 11, 2002, Ms. Ransom timely filed a Formal Complaint of Discrimination alleging, among other matters, that Agriculture discriminated against her on account of her sex and her disability (depression) in failing to upgrade her position and promote her to GS-15.

43.) On July 3, 2003, Agriculture accepted Ms. Ransom's Formal Complaint for investigation, including her claim that Agriculture discriminated against her on account of her sex and her disability (depression) in failing to upgrade her position and promote her to GS-15; and, in due course, made it the subject of an EEO investigation.

44.) The Report of Investigation of Ms. Ransom's Formal Complaint confirms that Agriculture investigated whether Ms. Ransom was subject to discrimination on account of her sex and her disability (depression) by not having her position upgraded and by being denied promotion to GS-15.

45.) Until July 23, 2002, defendant repeatedly and uniformly advised Ms. Ransom that the process of evaluating her position and grade level through a desk audit was an on-going process that defendant had not made a final decision about upgrading Ms. Ransom's position or promoting her to Grade 15 at any time before July 18, 2002.

46.) At no time prior to July 18, 2002, did the agency make a final decision whether to upgrade Ms. Ransom's position to GS-15 and, if so, whether to advertise Ms. Ransom's position for competition or promote Ms. Ransom in place to GS-15.

47.) At no time prior to Ms. Ransom's involuntary reassignment on February 23, 2003, did the agency take the required steps to make the desk audit a final, effective personnel action, by certifying a final position description for Ms. Ransom as accurately reflecting her actual duties; making a final decision whether to advertise Ms. Ransom's position for competition, to promote Ms. Ransom in place, or leave Ms. Ransom's grade unaffected; and notifying Ms. Ransom of its final decision.

48.) Until the week before Ms. Ransom's retirement became effective on August 1, 2003, Agriculture repeatedly and uniformly refused Ms. Ransom's requests to release the staff personnelist's Position Evaluation Statement of October 2, 2000; or the servicing personnel office's Memorandum of April 2, 2001, which transmitted the foregoing Position Evaluation Statement to senior AMS management and recommended upgrading Ms. Ransom and her position to GS-15.

49.) Ms. Ransom thus timely initiated the administrative EEO complaints process concerning defendant's discriminatory failure to promote her to GS-15 on August 14, 2002, for the following reasons, among others.

50.) First, the effective date of defendant's decision not to upgrade Ms. Ransom's position or promote Ms. Ransom to GS-15 had not passed by the time she first initiated the informal EEO process on August 14, 2002.

51.) Second, Ms. Ransom initiated the informal EEO process in fewer than 45 days from July 23, 2002, the date Ms. Ransom was first notified that defendant had decided not to upgrade Ms. Ransom's position or promote Ms. Ransom to GS-15.

52.) Third, Ms. Ransom reasonably relied to her detriment on the representations and actions of defendant that the final decisions about upgrading her position to GS-15, announcing Ms. Ransom's position for competition, and promoting Ms. Ransom in place to GS-15 were under continuous study and not final at any time prior to July 18, 2002.

53.) Defendant's representations and actions, and its concealment of the staff personnelist's Position Evaluation Statement of October 2, 2000; and the servicing personnel office's Memorandum of April 2, 2001, which transmitted the foregoing Position Evaluation Statement to senior AMS management and recommended upgrading Ms. Ransom and her position to GS-15, estop defendant from asserting that Ms. Ransom did not initiate the informal EEO complaints process over its failure to promote her to Grade 15 in timely fashion.

B.   **Ms. Ransom's Second Administrative Complaint**

54.) On or about April 22, 2004, the agency issued the Report of Investigation into Ms. Ransom's Formal Complaint of Discrimination.

55.) The Report of Investigation contained notice of an official personnel action reassigning Ms. Ransom to a nonsupervisory position effective February 23, 2003, the first such notice Ms. Ransom had that her involuntary reassignment from her supervisory position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs, was to a nonsupervisory position in the agency's Office of Identity Preservation and Biotech Verification.

56.) Until that time, and at all times during her employment with Agriculture, defendant advised Ms. Ransom that the position to which she was reassigned in the agency's Office of Identity Preservation and Biotech Verification was a supervisory one.

57.) On May 4, 2004, Ms. Ransom timely brought the removal of her supervisory duties to the attention of the agency and requested that it either initiate the informal EEO counseling process or amend her pending Formal Complaint to include a claim that her involuntary reassignment was to a nonsupervisory position.

58.) On May 5, 2004, Ms. Ransom filed a request for a hearing on her Formal Complaint with the Equal Employment Opportunity Commission ("EEOC").

59.) On May 13, 2004, the agency notified Ms. Ransom that because her complaint was pending before the EEOC, it would not initiate the counseling process and that she would be required to request that the EEOC amend her pending complaint to include her claim of retaliation.

60.) On October 12, 2004, the EEOC granted Ms. Ransom's motion to amend her complaint that her involuntary reassignment from her position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs, to involuntarily to a nonsupervisory position in defendant's Office of Identity Preservation and Biotech Verification.

<u>**Initiation Of Suit**</u>

61.) More than 180 days have elapsed since Ms. Ransom filed a request for a hearing with the EEOC on May 5, 2004, without final action on her complaints of discrimination and retaliation that are the subjects of this action.

**Count I**
(<u>**Discrimination Based On Sex**</u>)

62.) Plaintiff incorporates the allegations contained in paragraphs 1 through 61 above, as though fully set forth here.

63.) Plaintiff is a woman.

64.) At all times relevant, plaintiff's position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs, was properly graded at GS-15.

65.) At all times relevant, plaintiff was performing GS-15 grade duties in her position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs.

66.) At all times relevant, plaintiff was eligible for and entitled to promotion to grade GS-15 in her position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs.

67.) Defendant discriminated against plaintiff on account of her sex in failing to upgrade her position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs, to grade GS-15 and failing to promote plaintiff to grade GS-15.

68.) In failing to upgrade plaintiff's position and promote plaintiff to grade GS-15, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment.

69.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in failing to upgrade plaintiff's position and promote plaintiff to grade GS-15 on account of her sex.

70.) Defendant's violation of Title VII caused plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count II**
**(Discrimination Based On Disability)**

71.) Plaintiff incorporates the allegations contained in paragraphs 1 through 70 above, as though fully set forth here.

72.) Plaintiff is an individual with a disability having a record of a physical impairment, and is regarded by defendant as having a physical impairment, specifically recurrent depression.

73.) Plaintiff's disability substantially limits one or more major life activities.

74.) Plaintiff is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the positions she has encumbered with defendant and of her professional fields.

75.) At all times relevant, plaintiff's disability was known to defendant.

76.) At all times relevant, plaintiff's position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs, was properly graded at GS-15.

77.) At all times relevant, plaintiff was performing GS-15 grade duties in her position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs.

78.) At all times relevant, plaintiff was eligible for and entitled to promotion to grade GS-15 in her position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs.

79.) Defendant discriminated against plaintiff on account of her disability in failing to upgrade her position as Chief of AMS' Research and Promotion Branch, Fruit and Vegetable Programs, to grade GS-15 and failing to promote plaintiff to grade GS-15.

80.) In failing to upgrade plaintiff's position and promote plaintiff to grade GS-15, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment.

81.) Defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, in failing to upgrade plaintiff's position and promote plaintiff to grade GS-15 on account of her disability.

82.) Defendant's violation of the Rehabilitation Act caused Ms. Ransom to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## Count III
### (Retaliation – Title VII)

83.) Plaintiff incorporates the allegations contained in paragraphs 1 through 82 above, as though fully set forth here.

84.) Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, when she pursued the informal and formal administrative complaints processes, beginning no later than August 14, 2002.

85.) Defendant retaliated against plaintiff on account of her protected activity effective February 18, 2003, by reassigning plaintiff involuntarily from her supervisory position as Chief of the Research and Promotion Branch, Fruit and Vegetable Programs, to a position in defendant's Office of Identity Preservation and Biotech Verification, a position not classified as supervisory and not performing any supervisory duties.

86.) In reassigning plaintiff involuntarily to a nonsupervisory position, defendant materially and adversely

altered the terms, conditions, and privileges of plaintiff's employment.

87.) Defendant violated of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3)), in reassigning plaintiff involuntarily to a nonsupervisory position in retaliation for her protected activity.

88.) Defendant's violation of Title VII caused plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count IV**
**(Retaliation – Rehabilitation Act)**

89.) Plaintiff incorporates the allegations contained in paragraphs 1 through 88 above, as though fully set forth here.

90.) Plaintiff engaged in activity protected under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§701 et. seq., when she pursued the informal and formal administrative complaints processes, beginning no later than August 14, 2002.

91.) Defendant retaliated against plaintiff on account of her protected activity effective February 18, 2003, by reassigning plaintiff involuntarily from her supervisory position as Chief of the Research and Promotion Branch, Fruit and Vegetable Programs, to a position in defendant's Office of Identity Preservation and Biotech Verification, a position not classified as supervisory and not performing any supervisory duties.

92.) In reassigning plaintiff involuntarily to a nonsupervisory position, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment.

93.) Defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, in reassigning plaintiff involuntarily to a nonsupervisory position in retaliation for her protected activity.

94.) Defendant's violation of the Rehabilitation Act caused plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

<strong><u>PRAYER FOR RELIEF</u></strong>

Wherefore, plaintiff Martha B. Ransom respectfully requests that the Court enter judgment in her favor and award her the following relief.

A.    An Order declaring that defendant violated plaintiff's civil rights under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791 <u>et</u> <u>seq</u>., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.

B.    Retroactive promotion to grade GS-15 with commensurate backpay and benefits including, but not limited to, retroactive recalculation of plaintiff's annuity.

C.    Compensatory damages in an amount to be determined at trial to compensate plaintiff for the physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience,

career loss, loss of future career opportunities, loss of professional reputation, and loss of enjoyment of life.

     D.    Pre- and post-judgment interest.

     E.    The attorneys' fees and costs incurred by plaintiff.

     F.    Such other relief as may be just and appropriate.

## **Jury Demand**

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

Robert C. Seldon, Esq.
  D.C. Bar No. 245100
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 305
Washington, D.C.  20004
(202) 955-6968


By: _____
Counsel for Plaintiff